UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRENT ELLIOTT WHITE,<br><br>     Plaintiff,<br><br> v.<br><br><br>MEGADETH, INC., 5B ARTISTS + MEDIA, DAVE MUSTAINE, UNIVERSAL MUSIC GROUP, INC., JOHN DOE 1-5, DOE CORPORATIONS 1-5,<br><br>     Defendants. | Docket No. 23-cv-00861<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff BRENT ELLIOTT WHITE, by and through his attorneys, KIBLER FOWLER & CAVE LLP and KOVEL LAW PLLC, hereby alleges as follows:

## INTRODUCTION

1. Plaintiff Brent Elliott White is a freelance illustrator and designer based out of New York City whose work includes comics, concept design and illustration.

2. Since 2007, Plaintiff has worked almost exclusively in the music industry providing cover art, merchandise designs, and other art products for clients, including the music recording artists Trivium, Job for a Cowboy, Death Angel, Arch Enemy and Megadeth.

3. In this action, Plaintiff seeks damages and injunctive relief against Defendants Megadeth, Inc., 5B Artists + Media, Dave Mustaine, Universal Music Group, Inc., JOHN DOE 1-5, and DOE CORPORATIONS 1-5 (hereafter collectively "Defendants") for willful copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 et seq.

4. Between approximately July 2022 and November 2022, Plaintiff negotiated with Defendants over the use of Plaintiff's artwork in connection with the promotion of Megadeth's most recent studio album, *The Sick, The Dying… And the Dead!*. Defendants decided to use Plaintiff's work as the cover art for *The Sick, The Dying… And the Dead!* in connection with the album's pre-release in July 2022 and its general release in September 2022—all without having paid Plaintiff and without his permission.

5. Defendants have also used Plaintiff's artwork in connection with other commercial activities, including the sale of apparel and other merchandise, again all without Plaintiff's permission.

6. In addition to damages for copyright infringement, Plaintiff seeks damages against Defendants arising from Defendants' willful failure to offer a written agreement and compensate Plaintiff for services rendered, in violation of the New York City Freelance Isn't Free Act ("FIFA"), which is codified as New York City Administrative Code § 20-927 et seq.

7. Additionally, Plaintiff seeks compensation for the unlawful attempts to reduce his compensation after he provided his services, and the retaliation that he endured after his complaints about Defendants' violation of FIFA.

8. Plaintiff alleges, pursuant to FIFA, that he is entitled to recover (1) back pay and other compensatory damages, (2) liquidated damages, (3) attorney's fees and costs, (4) interest and (5) any other relief deemed just and proper by this Court.

## JURISDICTION AND VENUE

9. Plaintiff's claims arise under the Copyright Laws of the United States, 17 U.S.C. § 1 et seq.

10. This Court has subject matter jurisdiction under the Copyright Act, 17 U.S.C. § 101 et seq., 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship) and 1338(a) (copyright).

11. Plaintiff's claims exceed the sum or value of $75,000, exclusive of interest and costs, and diversity of citizenship exists between Plaintiff and each of the Defendants.

12. Venue is proper under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) because the events underlying this action occurred within the Eastern District of New York, injuries suffered by Plaintiff took place in this District, and Plaintiff resides in this District.

13. Defendants are subject to the general and specific personal jurisdiction of this Court because of their contacts with the State of New York.

14. This Court has personal jurisdiction over Defendants. Specifically, Defendants have engaged in direct, contributory, vicarious, or otherwise induced acts of copyright infringement in this District. Further, Defendants have engaged in continuous and systematic business in New York and, upon information and belief, derive substantial revenues from commercial activities in New York. Plaintiff is informed and believes and, upon such, alleges that Defendants have also engaged in a multiplicity of acts directed toward New York, including without limitation, soliciting and engaging in numerous commercial transactions with New York persons. As a result, there is a direct and substantial nexus between Plaintiff's claims in this case and Defendants' transaction of business in New York.

## PARTIES

15. At all times hereinafter mentioned, Plaintiff Brent Elliott White ("Plaintiff" or "White") is an individual and citizen of the State of New York, residing in the County of Queens.

16. Defendant Megadeth Inc. is a for-profit corporation organized under the laws of the State of California and maintains its principal place of business at 700 12th Avenue South, Suite 201, Nashville, Tennessee.

17. Defendant 5B Artists + Media is a Limited Liability Company organized under the laws of the State of California and maintains its principal place of business at 15821 Ventura Boulevard, Suite 370, Encino, California.

18. Defendant Dave Mustaine is an individual who is a citizen and resident of the State of Tennessee.

19. Defendant Universal Music Group, Inc., is a for-profit corporation organized under the laws of the State of Delaware and maintains its principal place of business at 2220 Colorado Avenue in Santa Monica, California. Universal Music Group, Inc. is the world's largest record label and music publishing company.

20. The John Doe and Doe Corporation Defendants are named herein as fictitious entities, as they are currently unknown (if they exist at all) and are other people or entities that may be liable to Plaintiff for the injuries set forth in this complaint and to which an amended complaint may be necessary. Plaintiff will ask leave of Court to amend this Complaint and insert the true names and capacities of said Defendants when the same have been ascertained. Plaintiff is informed and believes and, upon such, alleges that each of the Defendants designated herein as a "DOE" is legally responsible in some manner for the events and happenings herein alleged, and that Plaintiff's damages as alleged herein were proximately caused by such Defendants.

## STATEMENT OF FACTS

21. Plaintiff White is a freelance illustrator and designer based out of New York City whose work includes comics, concept design and illustration.

22.     Megadeth Inc. is the corporate entity through which the world-famous heavy metal "thrash" band Megadeth and its lead singer, Dave Mustaine, conduct business.

23.     5B Artists + Media represents Megadeth as its business manager.

24.     Upon information and belief, Megadeth has a music record recording agreement with Universal Music Group, Inc., through which it releases its recorded music.

25.     Plaintiff has created artwork and characters over time for Megadeth that have become an integral part of the band's identity, brand and appeal and helps sell Megadeth's music.

26.     For example, Plaintiff created artwork for a character called "Dystopia Vic" (and variations thereof), which is a reference to "Vic Rattlehead", a character mascot for the band. Megadeth sells products with the "Dystopia Vic" artwork at its online store and elsewhere.[1] More recently, Plaintiff created artwork for a new character, "Sick Vic".

27.     In early 2020, Defendants approached Plaintiff about creating a design concept and artwork for an upcoming Megadeth studio album, which would be the third Megadeth album Plaintiff has been involved in designing and producing artwork for.

28.     Soon after their initial conversations, Defendants hired Plaintiff within the meaning of FIFA.

29.     Defendants did not offer Plaintiff a written contract at the time.

30.     The initial concept phase of the album artwork took numerous rounds of revisions and edits over more than one year, resulting in hundreds of hours of work.

31.     Defendants did not pay Plaintiff for any of these hours.

32.     By mid-April 2021, Megadeth had settled on the concept and artwork that would become the basis for the cover of their album now entitled *The Sick, The Dying… And the Dead!*.

---

[1] https://usstore.megadeth.com/products/vic-dystopia-tee

33. Around this time, Defendants asked Plaintiff to create cover art for an EP release, which Plaintiff also worked on artwork for.

34. On June 22, 2022, 5B Artists + Media CEO (and Megadeth manager) Bob Johnsen told Plaintiff that Megadeth had been working on costumes for an upcoming tour and required additional renderings of the artwork chosen for the album cover because the stage decorations for the tour would be based on the album cover art.

35. By text, Plaintiff reminded Johnsen that he still did not have a written contract with Megadeth and had not been paid for his work, saying "I know album release time is hectic but I have to mention that any send off, including album art, is contingent on compensation and contract. So we're going to have to sort that out soon."

36. In response, Johnsen told Plaintiff "First song drops tmrw [sic]" but assured "No one intended to not have this papered by now" and he "would bring it up the right way."

37. On June 23, 2022, without a signed agreement with Plaintiff in place and without paying Plaintiff anything for his work, Megadeth knowingly released Plaintiff's artwork and—shockingly to Plaintiff—credited its lead singer, Dave Mustaine, for the album's "Art Concept."

38. Additionally, Plaintiff's artwork was released in conjunction with Megadeth's single as a pre-release and featured in Rolling Stone Magazine, but Plaintiff did not appear in any of the credits for the artwork.

39. The next day Plaintiff reached out to Universal Music Group, complaining, "I still don't have a contract or payment from UMG for The Sick The Dying and the Dead…Bob [Johnsen] reached out yesterday…and he said he left it with UMG… I assumed someone would reach out to me to have this done before the album went out. Now the art was released in conjunction with the single and album pre-sale on social, [Megadeth] website, Rollingstone *sic*.

[Magazine]…None of it credits me, not a mention on social and no credit in the article. We don't have a contract or art release or usage agreement. Not trying to get legal here but since we don't have a rights transferred agreement copyright does reside with me."

40. After the artwork was released, Defendants attempted to force Plaintiff to accept the same terms as for the first Megadeth album he provided artwork for.

41. Plaintiff never agreed to these terms and had expressly told Defendants before the album artwork was released that this arrangement would not be acceptable.

42. In late July 2021, Plaintiff gave Johnsen a breakdown of the time he spent working on the album artwork to date, which totaled twenty-one thousand five hundred dollars ($21,500).

43. Johnsen agreed to the amount, but only if it would be for a "total buyout" of Plaintiff's intellectual property rights to his artwork.

44. Plaintiff refused, and when he gave Defendants a price for buying out his intellectual property rights, with carve outs for ways in which Plaintiff had previously told Megadeth he expected to be able to continue to exploit his own work and profit from it, Defendants refused to agree to those terms, including Plaintiff's buyout price.

45. Still with no contract or usage agreement in place with Plaintiff, Megadeth released its album *The Sick, The Dying… And the Dead!* in September 2022 (following a pre-release in July 2022), which featured Plaintiff's artwork without his permission, including on the album cover as depicted here:



46. On November 29, 2022, Johnsen threatened that if Plaintiff did not like the terms that Megadeth was prepared to pay to buy Plaintiff's artwork and associated rights, then "we can start over" with the negotiations, which sought to chill Plaintiff into believing that the only way Megadeth would pay Plaintiff is if he accepted the less favorable terms offered.

47. After discussions broke down between the parties, Defendants continued to use Plaintiff's artwork anyway (collectively, the "Works") without having paid him and without his permission.

48. *The Sick, The Dying… And the Dead!* is already a hit album, with tens of thousands of albums sold and tens of millions of digital streams since its release. The lead single from the album, *We'll be Back*, was nominated for Best Metal Performance for the 65th Annual Grammy Awards, which will be held on February 5, 2023.

49. Megadeth also released YouTube videos with Plaintiff's cover art without his permission. YouTube videos featuring Plaintiff's artwork have been viewed over five million times, and videos featuring characters that Plaintiff has created (or derivatives thereof) have been viewed nearly two million times.

50. In addition to the profits Defendants have made and will continue to make by selling music and streaming music and videos, Plaintiff's artwork is being used on merchandise—sold not only at Megadeth concerts, but also by retailers around the world.

51. For example, a company called R13 Denim has sold t-shirts and sweatshirts featuring Plaintiff's artwork for prices ranging from $100 to $600 each. Megadeth-branded clothing containing Plaintiff's artwork has been worn by Halsey, K-pop star BamBam, and other celebrities.

52. Upon information and belief, Defendants have licensed Plaintiff's artwork out to third parties, without Plaintiff's permission to do so. Plaintiff's artwork is being sold on the Megadeth Official Store website, as well as by Walmart, Amazon, and Hot Topic, among others. For example, a t-shirt currently offered for sale on Hot Topic's website featuring Plaintiff's artwork is depicted here:



53. To date, Megadeth has still failed to pay Plaintiff for the work he performed for Megadeth. Moreover, Plaintiff has not been credited for his artwork.

54. Additional instances of Plaintiff's works being infringed by Defendants to sell albums and merchandise are unknown to Plaintiff at this time and will be the subject of discovery in this case.

### FIRST CAUSE OF ACTION
### (Copyright Infringement, 17 U.S.C. § 501)

55. Plaintiff repeats and realleges the facts as set forth in the preceding paragraphs as if set forth in full herein.

56. Plaintiff is the owner of the copyrights to the Works, which substantially consist of material wholly original with their author and which are copyright subject matter under the laws of the United States. Plaintiff has complied in all respects with the Copyright Act and all of the laws of the United States governing copyrights.

57. Plaintiff has not granted a license or otherwise permitted Defendants to use his copyrighted material.

58. Defendants have directly infringed, and unless enjoined, will continue to infringe Plaintiff's copyrights by reproducing, displaying, distributing and utilizing the Works for purposes of trade in violation of 17 U.S.C. §§ 106 and 501.

59. Defendants have willfully infringed, and unless enjoined, will continue to infringe Plaintiff's copyrights by knowingly reproducing, displaying, distributing, and utilizing the Works for purposes of trade. Defendants have received substantial benefits in connection with the unauthorized reproduction, display, distribution, and utilization of the Works for purposes of trade.

60. All of the Defendants' acts are and were performed without the permission, license, or consent of Plaintiff.

61. The said wrongful acts of Defendants have caused, and are causing, great injury to Plaintiff, which damage cannot be accurately computed, and unless this Court restrains Defendants from further commission of said acts, Plaintiff will suffer irreparable injury, for all of which it is without an adequate remedy at law. Accordingly, Plaintiff seeks a declaration that Defendants are infringing Plaintiff's copyrights and an order under 17 U.S.C. § 502 enjoining Defendants from any further infringement of Plaintiff's copyrights.

62. As a result of the acts of Defendants alleged herein, Plaintiff has suffered and is suffering substantial damage to its business in the form of diversion of trade, loss of profits, injury

to goodwill and reputation, and the dilution of the value of its rights, all of which are not yet fully ascertainable, in an amount to be proven at trial.

63. Defendants' copyright infringement was committed maliciously, fraudulently, and oppressively with willful and conscious disregard of Plaintiff's rights and with the wrongful intent to injure Plaintiff.

## SECOND CAUSE OF ACTION
### (Contributory Copyright Infringement)

64. Plaintiff repeats and realleges the facts as set forth in the preceding paragraphs as if set forth in full herein.

65. To the extent that any Defendant did not directly infringe Plaintiff's works, Plaintiff is informed and believes that these parties induced, caused, and/or materially contributed to the infringing activity described herein by permitting and encouraging the use of Plaintiff's artwork on album covers, merchandise, YouTube videos, and other commercial endeavors.

66. Defendants each knew or had reason to know that materially contributing to Defendants' use of the Works for purposes of trade would contribute to infringement of Plaintiff's copyrighted material.

67. As an actual and proximate result of Defendants' contributory copyright infringement, as described herein, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.

68. Defendants' contributory copyright infringement was committed maliciously, fraudulently, and oppressively with willful and conscious disregard of Plaintiff's rights and with the wrongful intent to injure Plaintiff.

## THIRD CAUSE OF ACTION
### (Freelance Isn't Free Act – Failure to Offer Contract)

69. Plaintiff repeats and realleges the facts as set forth in the preceding paragraphs as if set forth in full herein.

70. Defendants violated the Freelance Isn't Free Act by failing to offer Plaintiff a contract that conforms with the requirements of the Act.

71. Specifically, New York City Administrative Code § 20-928 states:

a. Whenever a hiring party retains the services of a freelance worker and the contract between them has a value of $800 or more, either by itself or when aggregated with all contracts for services between the same hiring party and freelance worker during the immediately preceding 120 days, the contract shall be reduced to writing. Each party to the written contract shall retain a copy thereof.

b. The written contract shall include, at a minimum, the following information:
 1. The name and mailing address of both the hiring party and the freelance worker;
 2. An itemization of all services to be provided by the freelance worker, the value of the services to be provided pursuant to the contract and the rate and method of compensation; and
 3. The date on which the hiring party must pay the contracted compensation or the mechanism by which such date will be determined.

72. Defendants failed to offer Plaintiff a written contract as required by § 20-928 and as a result, Defendants are liable to Plaintiff for statutory damages pursuant to § 20-933(b)(2)(a).

73. Additionally, as Defendants violated New York City Administrative Code § 20-928, Defendants are liable to Plaintiff for statutory damages equal the value of the underlying contract, pursuant to New York City Administrative Code § 20-933(b)(2)(b).

## FOURTH CAUSE OF ACTION
### (Freelance Isn't Free Act – Unpaid Compensation)

74. Plaintiff repeats and realleges the facts as set forth in the preceding paragraphs as if set forth in full herein.

75. Defendants violated the Freelance Isn't Free Act by failing to compensate Plaintiff pursuant to the Agreement.

76. Specifically, New York City Administrative Code § 20-929(a) requires:

> Except as otherwise provided by law, the contracted compensation shall be paid to the freelance worker either: 1. On or before the date such compensation is due under the terms of the contract; or 2. If the contract does not specify when the hiring party must pay the contracted compensation or the mechanism by which such date will be determined, no later than 30 days after the completion of the freelance worker's services under the contract.

77. To date, Defendants have failed to compensate Plaintiff, a period well more than thirty (30) days after the compensation became due.

78. As a result of the conduct of Defendants, Plaintiff has been harmed and damaged and pursuant to New York City Administrative Code § 20-933(b)(3), Plaintiff is entitled to statutory damages and liquidated damages in amount equal to double the value of the underlying contract, as well as his costs and attorney's fees and such other damages as appropriate.

### FIFTH CAUSE OF ACTION
### (Freelance Isn't Free Act – Requiring White to Accept Less than the Amount of Contract as a Condition of Payment)

79. Plaintiff repeats and realleges the facts as set forth in the preceding paragraphs as if set forth in full herein.

80. In only offering White a written contract after he had completed his work, Defendants violated the Freelance Isn't Free Act by requiring as a condition of payment that White accept less compensation than what was previously offered.

81. Specifically, Defendants violated New York City Administrative Code § 20-929(b), which requires:

> Once a freelance worker has commenced performance of the services under the contract, the hiring party shall not require as a condition of timely payment that the

14

freelance worker accept less compensation than the amount of the contracted compensation.

82. Once White began working for Defendants, and after Defendants received the benefit of White's work, Defendants required that White accept less than the agreed upon compensation to receive payment.

83. As a result of the conduct of Defendants, Plaintiff has been harmed and damaged and pursuant to New York City Administrative Code § 20-933(b)(3), Plaintiff is entitled to statutory damages and liquidated damages in an amount equal to double the value of the underlying contract, his costs and attorney's fees and such other damages as appropriate.

### SIXTH CAUSE OF ACTION
**(Freelance Isn't Free Act – Retaliation)**

84. Plaintiff repeats and realleges the facts as set forth in the preceding paragraphs as if set forth in full herein.

85. By threatening White when he demanded timely compensation from Defendants, including but not limited to Defendants' threats that White would have to "start over" negotiations with Megadeth in November 2022, more than one year after Megadeth began infringing on White's intellectual property and well after compensation was already due to White, Defendants violated the Freelance Isn't Free Act.

86. Specifically, Defendants violated New York City Administrative Code § 20-930, which states:

> No hiring party shall threaten, intimidate, discipline, harass, deny a work opportunity to or discriminate against a freelance worker, or take any other action that penalizes a freelance worker for, or is reasonably likely to deter a freelancer worker from, exercising or attempting to exercise any right guaranteed under this chapter, or from obtaining future work opportunity because the freelance worker has done so.

87. As a result of the conduct of Defendants, Plaintiff has been harmed and damaged and pursuant to New York City Administrative Code § 20-933(b)(4), Plaintiff is entitled to statutory damages equal to the value of the underlying contract for each violation arising under New York City Administrative Code § 20-930 and such other appropriate relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and against MEGADETH, INC., 5B ARTISTS + MEDIA, DAVE MUSTAINE, UNIVERSAL MUSIC GROUP, INC., JOHN DOE 1-5, DOE CORPORATIONS 1-5, as follows:

A. For an order permanently enjoining Defendants, their officers, agents, servants, employees, representatives, and attorneys, and all persons in active concert or participation with them, from designing, copying, reproducing, displaying, promoting, advertising, distributing, or selling, or engaging in any other form of dealing or transaction in, any and all products and services (including advertising and promotional materials, print media, signs, internet web sites, or any other media related thereto), either now known or hereafter devised, that infringe, contributorily infringe, vicariously infringe, or induce infringement of Plaintiff's copyrights in and to the Works.

B. For an accounting of all profits, income, receipts or other benefit derived by Defendants from the reproduction, copying, display, promotion, distribution or sale of products and services, or other media, either now known or hereafter devised, that improperly or unlawfully infringe upon Plaintiff's copyrights pursuant to 17 U.S.C. § 504 (a)(1) & (b).

C. For actual damages and disgorgement of all profits derived by Defendants from their acts of copyright infringement and to reimburse Plaintiff for all damages suffered by reasons of Defendants' acts pursuant to 17 U.S.C. § 504 (a)(1) & (b).

D. For statutory damages for copyright infringement, including willful infringement, in accordance with 17 U.S.C. § 504(a)(2) & (c).

E. For costs and interest pursuant to 17 U.S.C. §§ 504 (a)(1) & (b), 505.

F. For an award of statutory damages in an amount no less than $250.00 pursuant to New York City Administrative Code § 20-933(b)(2) for violation of New York City Administrative Code § 20-928;

G. For an award of statutory damages equal to the value of the underlying contract pursuant to New York City Administrative Code § 20-933(b)(2) for violation of New York City Administrative Code § 20-928 and other sections of the Freelance Isn't Free Act;

H. For an award of compensatory damages and liquidated damages equal to two times the value of the underlying contract for violation of New York City Administrative Code pursuant to New York City Administrative Code § 20-933(b) for violations of New York City Administrative Code pursuant to New York City Administrative Code § 20-929(a);

I. For an award of compensatory damages and liquidated damages equal to two times the value of the underlying contract for violation of New York City Administrative Code pursuant to New York City Administrative Code § 20-933(b) for violations of New York City Administrative Code pursuant to New York City Administrative Code § 20-929(b);

J. For an award of compensatory damages, pursuant to New York City Administrative Code § 20-933(b)(4), equal to the value of the underlying contract for each violation arising under New York City Administrative Code § 20-930;

K. For an award of attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505 and New York City Administrative Code § 20-933;

L. For an award of pre- and post-judgment interest as provided by law; and

M.     Any such other relief as the Court deems just and reasonable.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and all issues properly triable thereby.

Dated: New York, New York
February 3, 2023

                                                  **KOVEL LAW PLLC**

                                                  /s/ Daniel H. Kovel
                                                  DANIEL H. KOVEL
14 East 96th Street, #3
New York, New York 10128
P: (646) 397-1729
E: dkovel@kovel-law.com

**KIBLER FOWLER & CAVE LLP**

  /s/ Michael S. Carnevale
MICHAEL S. CARNEVALE
500 Fifth Avenue, 12th Floor
New York, New York 10110
P: (917) 909-6350
E: mcarnevale@kfc.law

MATTHEW J. CAVE
11100 Santa Monica Blvd.
Suite 360
Los Angeles, California 90025
P: (310) 409-0400
E: mcave@kfc.law
*(pro hac vice forthcoming)*